UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARTIN E. GOMEZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | 1:19 CV 2815 |
| ) | Hon. Marvin E. Aspen |
| TERI KENNEDY, Warden, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Before us is Petitioner Martin E. Gomez's ("Gomez" or "Petitioner") motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2254. (Pet. (Dkt. No. 1).) The State of Illinois filed a response on behalf of Warden Teri Kennedy (collectively "Respondent"). (Resp. to Pet. for Relief ("Resp.") (Dkt. No. 6).) For the foregoing reasons, we **deny** petitioner's request for relief and **deny** a certificate of appealability.

**BACKGROUND**

Respondent was indicted for solicitation of murder in 2014. (Resp. at 1); *People v. Gomez*, 2014 IL App (3d) 12023-U, ¶ 2. In that 2014 proceeding, Gomez moved to dismiss the indictment as based on false or misleading testimony to the grand jury. *Gomez*, 2014 IL App (3d) at ¶ 2. Gomez argued Respondent's indictment was based on false or misleading testimony of Detective Denise Powers that defendant solicited fellow inmate Miguel Hurtado to murder his

girlfriend. *Id.* at ¶ 5. Detective Powers' testimony was partially based on a surreptitious recording that Hurtado collected during a conversation with Gomez. *Id.* at ¶ 6. Petitioner's claim centers on whether Powers misled the grand jury in interpreting Gomez's request that Hurtado "get rid of" his girlfriend as a request to kill Gomez's girlfriend. *Id.* at ¶¶ 5–6. The trial judge denied Petitioner's motion to dismiss the indictment, and the parties proceeded to a bench trial. *Id.* at ¶ 2.

At trial, Gomez presented his interpretation of the recording. *Id.* at ¶¶ 9–10. Gomez claimed he was coerced into making the recording and that he actually only wanted Hurtado to hide his girlfriend since she was being pressured to testify against him. *Id.* at ¶¶ 10–11. The trial court judge listened to the tape and credited Hurtado's account of the contents of the tape. *Id.* The Illinois Court of Appeals affirmed the trial court's determinations on both the indictment and the sufficiency of the evidence to convict Gomez. *Id.* at ¶¶ 16–17, 20, and 22. Gomez appealed to the Illinois Supreme Court, but his appeal was denied. *People v. Gomez*, 8 N.E.3d 1050, 1050 (Ill. 2014) (table op.). Gomez subsequently filed for collateral relief in state court through a postconviction relief petition that he dismissed voluntarily on April 13, 2019. (Resp. at 3.)

Gomez petitioned this court for a writ of habeas corpus on April 26, 2019 under 28 U.S.C. § 2254, seeking relief under the Due Process Clause based entirely upon the State's introduction of false or misleading testimony before the grand jury. (Pet. at 5.) In other words, the sole question before this court is whether the trial court's denial of Gomez's motion to dismiss the original indictment was contrary to well-established law.

### STANDARD OF REVIEW

We are empowered to grant a writ of habeas corpus only if Petitioner is imprisoned "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a);

2

*Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475, 480 (1991). Federal habeas relief may be granted to a petitioner who can establish that the state court's adjudication of his claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or where the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at § 2254(d)(2).

Under § 2254(d)(1), the "contrary to" and "unreasonable application" clauses are given independent meaning. *Williams v. Taylor,* 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000). A state court decision is "contrary to" established Supreme Court precedent if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result]." *Id.*

A state court decision is "an unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or if the state court "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. The reasonableness inquiry "is quite deferential, such that a state decision may stand so long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005). "Under § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010) (citing *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003)). A

3

state court's factual determinations are presumed correct, and the burden rests upon the petitioner to rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).[1]

We construe Petitioner's *pro se* petition liberally. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017) ("A trial court is obligated to liberally construe a *pro se* plaintiff's pleadings." (citing *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007); *Kelley v. Zoeller*, 800 F.3d 318, 325 (7th Cir. 2015); *Nichols v. Mich. City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014)).

## ANALYSIS

### I. THE STATE TRIAL COURT DID NOT ERR IN DENYING PETITIONER'S MOTION TO DISMISS THE INDICTMENT.

Petitioner claims the Illinois trial court denied him his right to due process of law under the Fourteenth Amendment to the Federal Constitution when it allowed misleading testimony before the grand jury to serve as the basis for the State's indictment. (Pet. at 5.) Respondent argues Detective Powers' testimony represented a reasonable interpretation of the information presented before the grand jury, particularly when placed into the full context of the evidence available to Powers. (Resp. at 4.) Gomez argues he should have been allowed to present a letter from his girlfriend to contradict this characterization of testimony and asks this court to expand the record to consider the contents of this letter. (Pet. Reply ("Reply") (Dkt. No. 12) at 5.) Gomez argues the letter corroborates his account of Powers' testimony as misleading because it shows his girlfriend would have testified on his behalf. (*Id.*)

---

[1] Before addressing the merits of this habeas petition, we observe that the parties do not dispute that Petitioner has exhausted his state court remedies and has not procedurally defaulted on his claims. *See Moore v. Parke*, 148 F.3d 705, 708 (7th Cir. 1998); *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996). The Respondent concedes Petitioner properly raised the sole issue here on direct appeal in state court. (Resp. at 3.)

4

A criminal defendant may challenge the sufficiency of the indictment against him on direct appeal and through a petition for habeas corpus. *See U.S. v. Alhalabi*, 443 F.3d 605, 610–12 (7th Cir. 2006). "[A] conviction should not be overturned unless, after examining the record as a whole, a court concludes that an error may have had 'substantial influence' on the outcome of the proceeding." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256, 108 S. Ct. 2369, 2374, (1988); *see also U.S. v. Underwood*, 130 F.3d 1225, 1231 (7th Cir. 1997) (mem. op.) (reaffirming the substantial error standard). "There is no clearly established Supreme Court law saying that a prosecutor's knowing presentation of perjured testimony before a grand jury violates a criminal defendant's constitutional rights and thus the prosecutor's conduct did not 'result in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law' so as to warrant habeas relief under 28 U.S.C. § 2254(d)(1)." *Magee v. Butler*, No. 14 C 6879, 2015 WL 5951877, at *8 (N.D. Ill. Oct. 13, 2015) (citing *United States ex rel. Brown v. Pierce*, No. 10 C 7359, 2012 WL 851519, at *4 (N.D. Ill. Mar. 13, 2012)). In fact, there is no federally recognized right to state grand jury hearings at all, much less clear due process restrictions on the process. *See Alexander v. Louisiana*, 405 U.S. 625, 633, 92 S. Ct. 1221, 1226–27 (1972) ("[T]he Court has never held that federal concepts of a 'grand jury,' binding on the federal courts under the Fifth Amendment, are obligatory for the States."); *see also Bae v. Peters*, 950 F.2d 469, 477 (7th Cir.1991). Instead, all that is required is that a "criminal defendant must receive adequate notice of the charges against him so that he may defend himself against those charges." *Id.* at 478.

Detective Powers' characterization of Gomez's request to Hurtado was hardly perjury or intentionally misleading. Language is not construed so strictly in a claim of misconduct as to find a constitutional violation when *any* gap between the words on a recording and words before a

5

grand jury is present. *Bank of Nova Scotia*, 487 U.S. at 256, 108 S. Ct. at 2374. The police officer can hardly be charged as willfully misleading the jury for drawing a conclusion based on her complete investigation and then presenting the results of that conclusion as an interpretive overlay of Gomez's phrasing in a taped statement. Even if we were inclined to grant Petitioner relief here, he has made no showing that the state courts' rulings were obviously in contravention of existing Supreme Court precedent, meaning Gomez has failed to meet the standard required to receive habeas relief. In fact, Gomez's claim for relief is all but foreclosed by existing Supreme Court precedent that only requires an indictment provide adequate notice of the charges against the defendant so that he can defend against those charges. Defendant alleges no notice defect in the indictment, so he has not stated a procedural due process claim under either existing Supreme Court precedent or the law of this Circuit.

## II. ANY DEFECT IN PROCESS DUE WAS CORRECTED DURING THE BENCH TRIAL

Petitioner argues that the motion to dismiss his indictment would have been outcome determinative had the state trial court granted it, and therefore he is entitled to habeas relief if this court agrees with his characterization of Detective Powers' grand jury testimony as false or misleading. (Pet. at 5.) Defendants respond that any prejudice stemming from Powers' testimony was cured during the bench trial, where Gomez was allowed to present precisely the theory he wished to present to the grand jury. (Resp. at 5.) The judge considered Gomez's evidence, but decided Gomez's account of the phrase "get rid of her" was less credible than both Hurtado and Powers' testimony. (*Id.*) Thus, the judge determined Gomez had intended to solicit murder after reviewing all of the evidence. (*Id.*) Therefore, the Respondents claim that even if there was error in the grand jury proceeding, it was ultimately harmless. (*Id.*)

Prosecutorial misconduct claims pre-indictment are subject to harmless error review. *Bank of Nova Scotia*, 487 U.S. at 255, 108 S. Ct. at 2374 (1988). "[A] district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant." *Id.* Only "grave" errors result in dismissal of an indictment before trial. *Id.* Only cases alleging *structural* issues with the grand jury are exempt from harmless error analysis. *Id.* The Court points to racial discrimination in grant jury selection as the exemplar of such cases. *Id.* at 257, 108 S. Ct. at 2374–75. The Court then explicitly distinguished claims of prosecutorial misconduct, including claims of misleading the grand jury. *Id.* The finder of fact's verdict renders harmless the majority of errors in the charging decision that might have flowed from the violation in non-systemic violation cases. *U.S. v. Mechanik*, 475 U.S. 66, 73, 106 S. Ct. 938, 943 (1986). "In such a case, the societal costs of retrial after a [] verdict of guilty are far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings." *Id.* "[A]ny prejudice stemming from alleged false testimony before the grand jury was rendered harmless by the trial jury's guilty verdict." *Magee*, 2015 WL 5951877, at *8 (citing *U.S. ex rel. Quesada v. Atchison*, No. 12 C 8264, 2014 WL 4668644, at *5 (N.D. Ill. Sept. 18, 2014)).

If there was any error here, it was harmless. The grand jury would have come to the same conclusion that there was probable cause of Gomez's solicitation of murder regardless of whether Detective Powers' testified that the precise instructions on the recording were to "get rid of" Ms. Gustafson or to kill her. Her interpretation of events was not the only evidence the grand jury heard: they also received the contextual evidence Powers' collected such as the photo of Ms. Gustafson, the phone number, and the prior discussions between Hurtado and Gomez that were not recorded. The combined weight of that evidence would have led the grand jury to the same

7

conclusion Detective Powers suggested in her testimony. Petitioner's argument that letters from Ms. Gustafson contradict Powers' explanation of his language is an appropriate argument to raise, but the prosecution is not *required* to raise all defense positions before the grand jury, particularly where Petitioner was allowed to present his argument at trial. Thus, the only way to dispute Powers' interpretive gloss on the evidence here would require the Petitioner to introduce his own evidence to dispute her account, or alternatively require the prosecutors to only submit *unequivocal* evidence of guilt during the grand jury phase. This burden goes well beyond the probable cause requirement to return an indictment, and we thus cannot abide it.

We agree with Respondent that the bench trial cured any possible error in the grand jury testimony. Defendant was given the ability to question Detective Powers before the judge, sitting as the trier of fact, about precisely the discrepancy in her testimony before the grand jury he alleges led to his indictment being issued. The trial judge chose to credit Powers' explanation of Gomez's "get rid of her" statement as solicitation of murder, implicitly rejecting Gomez's claims that he merely wanted Hurtado to whisk his girlfriend away. Since Gomez was given the right to present precisely the evidence and theory in his defense he claims was denied at the grand jury phase before his guilt was determined, we do not see what procedural process Gomez was denied. Criminal defendants are not entitled to present the same challenge to the prosecution's case both before the grand jury and the petit jury; in fact, grand jury proceedings are always conducted without the potential defendant present. *See U.S. v. Calandra*, 414 U.S. 338, 343–44, 94 S. Ct. 613, 618 (1974). Ultimately, the ability to correct any misleading testimony from the prosecution during Petitioner's defense means his due process claim fails.

### III. CERTIFICATE OF APPEALABILITY

Respondents argue that this court should decline to issue Petitioner a certificate of appealability because his petition does not make a substantial showing of the denial of a constitutional right. (Resp. at 5 (citing *Slack v. McDaniel*, 529 U.S. 473, 483 (2000)).) Petitioner argues there is a substantial due process question about which reasonable jurists can disagree. (Reply at 5–6.) We agree with Respondents for the following reasons, and therefore decline to issue a certificate of appealability.

A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller–El*, 537 U.S. at 336; *Evans v. Circuit Court of Cook Cnty.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that reasonable jurists would find the Court's assessment of his § 2254 claims debatable or wrong. *Miller–El*, 537 U.S. at 336; *Slack*, 529 U.S. at 484.

Reasonable jurists would not disagree with the Court's assessment of Petitioner's § 2254 claims because they do not reflect any established Supreme Court precedent, and thus fails to come close to the standard for habeas relief from a state conviction. *See Magee*, 2015 WL 5951877, at *8. Gomez only offers precedents from the Supreme Court that deal generally with the purpose of grand juries. (Reply at 4–5.) While it is true that prosecutors must not unduly influence the grand jury, Petitioner's citations are far afield from his proffered due process claim in this petition.

*First,* Petitioner has the holding in *Bank of Nova Scotia v. U.S.* backwards. The Supreme Court did not allow a district court to dismiss an indictment for prosecutorial misconduct,

including "misleading the jury," without showing of actual prejudice. 487 U.S. 250, 254, 108 S. Ct. 2369, 2372 (1988). No reasonable jurist could view *Bank of Nova Scotia* as establishing the exceedingly exacting standard for grand jury testimony the Petitioner reads into the Due Process Clause. *Id.* at 256, 108 S. Ct. 2374. Specifically, the *Bank of Nova Scotia* Court stated: "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* (citing *U.S. v. Mechanik*, 475 U.S. 66, 78, 106 S. Ct. 938, 945–46 (1986)). Even if we had some doubts about the factual basis for the indictment, which we do not, *Bank of Nova Scotia* is not on point enough to lead reasonable jurists to disagree about the application of Supreme Court precedent to this case.

*Second*, Petitioner's citation to *Wood v. Georgia* provides no support for his position. *Wood* dealt with a contempt citation issued against a sheriff running for reelection who published an open letter criticizing the work of a grand jury. *Wood v. Georgia*, 370 U.S. 375, 383, 82 S. Ct. 1364, 1369 (1962). The core issue in *Wood* was thus the application of the First Amendment "clear and present danger" exception to political speech that did not interfere with a grand jury's duties, which has no applicability to Gomez's procedural due process claim.[2] *Id.* at 385, 82 S. Ct. at 1370.

*Third, U.S. v. Calandra* contains language which explicitly contradicts Petitioner's due process argument. The Court stated: "The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted

---

[2] Although both claims are technically raised under the Fourteenth Amendment, the claim in *Wood* was an incorporation claim based on First Amendment principles, not a direct procedural due process challenge under the Fourteenth Amendment. *Id.* at 383, 82 S. Ct. at 1369.

on the basis of inadequate or incompetent evidence. . . ." *Calandra*, 414 U.S. at 344–45, 94 S. Ct. 613, 618 (1974). In other words, the reasoning in *Calandra* explicitly refutes Petitioner's attempt to elevate the required evidentiary integrity in grand jury proceedings. Not only that, but *Calandra* is also factually inapposite. *Id.* The case turns on the application of the Fourth Amendment exclusionary rule to a grand jury proceeding, which is different from Petitioner's challenge to the factual accuracy of testimony under the Due Process Clause. *See id.* at 341–42, 94 S. Ct. at 616–17.

*Fourth*, we reviewed other Supreme Court cases, but found none supporting Petitioner's proposition. In fact, the weight of the closest cases supports the precise analysis the state trial court conducted in this case. *See, e.g.*, *U.S. v. Mechanik*, 475 U.S. at 74–75, 106 S. Ct. at 943–44 (O'Connor, J., concurring in the judgment). *Mechanik* suggests some prosecutorial misconduct would sufficiently interfere with the independent function of the grand jury, such as violating the secrecy rule, having all witnesses remain in the courtroom during all testimony, or having the prosecutor sit in the grand jury room during deliberations. *Id.* But *Mechanik* held that not all misconduct rises to a level requiring federal relief, but only "grave" misconduct. *Id.* In other words, *Mechanik* confirms the standard we have applied to this petition above, which is a bar Petitioner does not come close to clearing.

We decline to provide Gomez with a certificate of appealability.

## CONCLUSION

For the foregoing reasons, we **deny** the petitioner's request for habeas relief under 28 U.S.C. § 2254 and **deny** his request for a certificate of appealability.

It is so ordered.

                                                                               */s/ Marvin E. Aspen*
                                                                      Honorable Marvin E. Aspen
                                                                      United States District Judge

Dated:  October 25, 2019
          Chicago, Illinois